UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Dean Langford and Nancy Langford, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>Zimmer, Inc. and Zimmer Holdings, Inc.,<br><br>Defendants. | Case No. 03-CV-12245-RCL<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE** |

## INTRODUCTION

A motion to strike should only be granted when the challenged allegations "could have no possible bearing on the subject matter of the litigation."[1] Zimmer has not and cannot satisfy this standard, and its Motion should be denied.

## FACTUAL BACKGROUND

At its core, this case presents a fairly straightforward claim: The Zimmer Centralign hip implant was defectively designed, and many of those implants failed much sooner than they should have. Among Plaintiffs' claims are allegations that Zimmer either 1) knew of this problem and failed to disclose it; or 2) recklessly or at least negligently failed to discover the problem.[2] Either way, Zimmer left a dangerously defective product on the market, and continued to profit from its sales in Minnesota and across the country.

The paragraphs that Zimmer asks this Court to strike from the Complaint go directly to the heart of these allegations. Paragraph 9 sets forth Zimmer's own public statements about the safety of its products, demonstrating the company's failure to accurately disclose the risks posed

---

[1] Lazar v. Trans Union LLC, 195 F.R.D. 665, 669 (C.D. Cal. 2000).

[2] See Plaintiffs' Complaint ¶¶ 39-45.

by the Centralign implant of which it was or should have been aware. Paragraphs 17-24 set forth some of the history of the rough-coat that was used on the Centralign. This coating has been identified as a reason for the early failure of the Centralign implant. The coating was used on previous Zimmer products as well and, as the Complaint sets forth, caused many of the same types of problems with those implants. As these paragraphs state, those problems were documented in peer-reviewed journals. Therefore, although some focus on other Zimmer products, the allegations in these eight paragraphs relate to the material question of what Zimmer knew or should have known about the rough-coat on the Centralign implant. And, finally, Paragraph 28 reveals Zimmer's motivation for continuing to sell a product that it knew – or at least should have known – had an abnormally high failure rate. From 1993 through early 2000, the company had earnings of more than $122 million on the Centralign implant alone.

## ARGUMENT

The Rule 12(f) motion to strike is regarded by the courts as an "extreme measure" that is "viewed with disfavor and [is] infrequently granted."[3] Because of this judicial disfavor, "the standard that must be met in order to strike material pursuant to 12(f) is a stringent one. ... Such motions are granted only if it is clear that the material alleged to be objectionable can have no possible bearing on the subject matter of the litigation."[4] Thus, "it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible," and "the courts should not tamper with the pleadings unless there is strong reason

---

[3] *Stanbury Law Firm v. Internal Revenue Service*, 221 F.3d 1059, 1063 (8th Cir. 2000) (reversing trial court's decision to strike allegations in complaint).

[4] *United States v. Bekhrad*, 672 F. Supp. 1529, 1531 (S.D. Iowa 1987) (denying defendant's motion to strike).

for so doing."[5] The complaints in the cases Zimmer relies on in its briefing may have met that criteria, but the allegations Zimmer seeks to strike in the Plaintiffs' Complaint do not.

Indeed, the cases Zimmer cites provide good examples of just how bad a pleading must be before a court will strike it under Rule 12(f). Several of the cases involved allegations that may or may not have been relevant, but which were inadmissible at trial as a matter of law. In *United States v. Centracare Health Sys., Inc.*,[6] for example, the complaint included allegations that made reference to confidential settlement communications, in violation of Federal Rule of Evidence 408. Similarly, in *Minnesota v. United States Steel Corp.*,[7] the complaint contained allegations related to the defendants' *nolo contendere* pleas in a criminal matter. Under the Clayton Act, such pleas were considered consent judgments that were inadmissible in evidence. Other cases involved rambling, lengthy and indecipherable pleadings. In *In re Agent Orange Product Liability Litigation*,[8] the court struck 425 paragraphs that provided a detailed history of the corporate defendant. The relevance of these allegations was unclear at best, and the court recognized the burden of responding to them all.[9] In *McHenry v. Renne*,[10] the trial court had provided the plaintiff with two chances to cure the defects in his complaint, which set forth its causes of action in a single, 30-line-long sentence that failed to describe which defendants were responsible for which alleged actions.[11] The court finally dismissed the case with prejudice

---

[5] *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).

[6] No. Civ. 99-106 (JRT/RLE), 2002 WL 1285089 at *2 (D. Minn. June 5, 2002).

[7] 44 F.R.D. 559, 583 (D. Minn. 1968).

[8] 475 F. Supp. 928, 936 (E.D.N.Y. 1979).

[9] *Id.* Any claim that Zimmer might be making that responding to these 10 paragraphs would be unduly burdensome is belied by the fact that they have, in fact, already responded.

[10] 84 F.3d 1172 (9th Cir. 1996).

[11] *Id.* at 1175.

3

because the complaint failed to give the defendants adequate notice of the wrongs they were accused of committing.[12] The complaint in *Martin v. Hunt* was described by the court variously as "rambling," "argumentative" and "verbose."[13] And in *Scalese v. City of Haverhill*, the court was faced with a complaint that it described as "well-nigh incomprehensible."[14]

The Plaintiffs' Complaint does not present any of the defects found in the cases Zimmer relies on. It tells a clear story of why the Plaintiffs believe Zimmer is liable for their injuries. The Paragraphs Zimmer wants to strike tie directly into that story. Paragraph 9 sets forth some of the public statements Zimmer has made about its products, and specifically about the safety of its products. These pledges turned out to be untrue in the case of the Centralign hip implant, a fact that is directly relevant to the Plaintiffs' claims of negligence, and breach of express and implied warranties. Paragraphs 17-24 recount Zimmer's experience with the Iowa Grit-Blasted, Harris Precoat, Precoat Plus and VerSys-Plus hip implants. All of these implants share a salient feature with the Centralign implant at issue in this case – the PMMA rough-coat that Plaintiffs allege caused the Centralign's premature failure. As these Paragraphs explain, the rough-coat presented similar problems in these other implants. This extensive prior experience with the rough-coat – and its problems – tends to prove that Zimmer knew about the defects in its product, or at least that it had ample opportunity to identify the defects and was remarkably negligent in its failure to do so. Either way, the allegations are relevant to Plaintiffs' causes of action, and should remain in the Complaint. As courts have noted in denying Rule 12(f) motions, "[f]acts bearing upon defendant's 'course of conduct' may carry weight,"[15] and, in light of the disfavored status of

---

[12] *Id.* at 1176.

[13] 28 F.R.D 35, 36 (D. Mass. 1961).

[14] 198 F. Supp. 431, 432 (D. Mass. 1961).

[15] *Fuchs Sugars & Syrups, Inc. v. Amstar Corp.*, 402 F. Supp. 636, 637 (S.D.N.Y. 1975).

motions to strike, "the Court's power to strike a pleading should be applied judiciously and where, as here, the allegation provides background and historical data, it should be retained."[16] Paragraph 28 explains Zimmer's motive for overlooking or disregarding evidence that its much-touted rough-coat posed a threat to its customers: Money. Sales of the Centralign were strong, earning Zimmer more than $122 million on that product alone in about seven years, until Zimmer quietly stopped making the product.

Zimmer bears the heavy burden of demonstrating that the allegations it seeks to strike "can have no possible bearing on the subject matter of the litigation"[17] and that "no evidence in support of the allegation would be admissible."[18] Since a motion to strike comes so early in the proceedings, before discovery has even begun, "[i]f there is any doubt as to the possibility of relevance, a judge should err on the side of denying a Rule 12(f) motion."[19]

Zimmer has not come close to meeting its burden. It offers nothing in support of its claims beyond its own bare, self-serving and conclusory statement that "[a]llegations regarding Zimmer products other than the Centralign implant at issue in the instant litigation are immaterial, unduly prejudicial, and likely not admissible." (Defendants' Memorandum in Support of Motion to Strike at 8). This assertion is left unsupported, probably because it finds no support in the law. To the contrary, in a product liability action, a defendant's experience with similar products is admissible to demonstrate that defendant's "awareness of potentially serious"

---

[16] *De Luxe Theatre Corp. v. Balaban & Katz Corp.*, 88 F. Supp. 311, 314 (N.D. Ill. 1950).

[17] *Schramm v. Krischell*, 84 F.R.D. 294, 299 (D. Conn. 1979).

[18] *Ali v. New York City Transit Auth.*, 176 F.R.D. 68, 70 (E.D.N.Y. 1997).

[19] *Schramm*, 84 F.R.D. at 299.

5

defects "and the possible need to conduct further research into them."[20] Indeed, the court in *Lakits v. York* denied a motion to strike allegations concerning a defendant's prior misconduct precisely because those allegations may have been relevant to the question of whether the defendants "had prior knowledge of such misconduct, or should have had such knowledge."[21] That is also the purpose served by the allegations in Paragraphs 17-24, and it would be improper to strike them.

## CONCLUSION

At best, Zimmer's motion is little more than an attempt to keep unflattering allegations out of a public document, because it fears that someone from the public (or the media) might read that document. That concern – faced by virtually every litigant in our open judicial system – is not nearly enough to justify striking factual allegations that are directly relevant to Plaintiffs' claims, and the Motion should be denied.

Respectfully submitted,

**DEAN LANGFORD AND NANCY LANGFORD**

By their attorneys,

_____
Paul T. Sullivan (BBO #659413)
ZELLE, HOFMANN, VOELBEL MASON
&GETTE LLP
950 Winter Street
Suite 1300
Waltham, MA  02451
(781) 466-0734

- and -

---

[20] *Golod v. Hoffman La Roche*, 964 F. Supp. 841, 855 (S.D.N.Y. 1997). *See also Rodriguez v. Clark Equip. Co., Inc.*, 147 F. Supp. 2d 66, 74 (D.P.R. 2001) (admitting into evidence service reports for a crane different from the one that injured the plaintiff, but that had the same brake latch mechanism that plaintiff alleged caused the injury).

[21] 258 F. Supp. 2d 401, 409 (E.D. Pa. 2003).

James S. Reece (#90037)
Chad A. Snyder (#288275)
Elizabeth A. Maki (#0321023)
**ZELLE, HOFMANN, VOELBEL MASON &GETTE LLP**
500 Washington Avenue South Suite 4000
Minneapolis, MN 55415
(612) 339-2020

- and -

Fred H. Pritzker (#88456)
Peter H. Berge (#149172)
Elliot L. Olsen (#203750)
**PRITZKER RUOHONEN & ASSOCIATES, P.A.**
33 South Sixth Street, Suite 4520
Minneapolis, MN 55402-3792
(612) 338-0202

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of March, 2004, I served a copy of the Opposition to Motion to Strike by federal express:

Edgar B. Hatrick
Day, Berry & Howard LLP
260 Franklin Street
Boston, MA 02110

Francis H. Morrison III
Deborah S. Russo
Day, Berry & Howard LLP
CityPlace I
Hartford, CT 06103-3499

Matthew S. Elvin
Dahm & Elvin LLP
9604 Coldwater Road, Suite 201
Fort Wayne, IN 46825

_____
Paul T. Sullivan